1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   COLENTHIA PAYNE,                    )   Case No. ED CV 09-8627 PJW
                                         )
11                  Plaintiff,           )
                                         )   MEMORANDUM OPINION AND ORDER
12          v.                           )
                                         )
13   MICHAEL J. ASTRUE,                   )
     Commissioner of the                 )
14   Social Security Administration,     )
                                         )
15                  Defendant.           )
     _____)

16

17                                       I.

18                                  INTRODUCTION

19       Plaintiff appeals the decision by Defendant Social Security

20   Administration ("the Agency"), denying her application for

21   Supplemental Security Income ("SSI") benefits.  She claims that the

22   Administrative Law Judge ("ALJ") erred when he rejected the functional

23   capacity assessment of examining internist Henry Johnson and when he

24   found that Plaintiff was not credible.  (Joint Stip. at 3-7, 16-17.)

25   For the reasons discussed below, the Agency's decision is REVERSED and

26   the case is REMANDED for further proceedings.

27

28

II.

SUMMARY OF PROCEEDINGS

Plaintiff applied for SSI benefits on July 19, 2005, alleging disability since December 31, 2004. (Administrative Record ("AR") 18, 301-04.) After the Agency denied the application, Plaintiff requested an administrative hearing. (AR 279-87.) The Agency denied the request as untimely. (AR 218-22.) While her appeal of this denial was pending, Plaintiff filed a second application for SSI benefits. (AR 90-92.) This application was also denied initially. (AR 59-63, 66.) The Appeals Council subsequently found that there was good cause for Plaintiff's untimeliness and directed that a hearing be held regarding her initial application. (AR 271-74.) On March 3, 2008, the ALJ held a hearing with respect to both applications. (AR 36-54.) On April 25, 2008, the ALJ issued a decision denying both applications. (AR 15-32.) Plaintiff requested review and submitted additional evidence in support of her applications. (AR 13, 190-217.) On October 7, 2009, the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff then commenced this action.

III.

DISCUSSION

1.  <u>The ALJ's Rejection of the Examining Physician's Opinion</u>

In her first claim of error, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Johnson's functional assessment. (Joint Stip. at 5-7.) For the following reasons, the Court disagrees.

An ALJ must provide "specific and legitimate reasons" for rejecting an examining physician's opinion, even if that opinion is contradicted. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

2

1  Nevertheless, "[w]here medical reports are inconclusive, questions of
2  credibility and resolution of conflicts in the testimony are functions
3  solely of [the ALJ]." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d
4  595, 601 (9th Cir. 1999) (quotation omitted).

5      Internist Henry Johnson examined Plaintiff and found that she had
6  a "positive S4 heart gallop," her abdomen was tender to deep pressure,
7  her vertebral column was tender along the midline in the cervical
8  region, and she had limited range of motion of her lumbar spine.   (AR
9  383-85.)   He also found that she had decreased grip strength in both
10  hands, a positive Phalen's test, positive Tinel's sign, minimal
11  arthritic changes in her left knee, tenderness in the medial portion
12  of her right knee, and depressed reflexes.   (AR 384-85.)   He noted
13  more than 20 trigger points in Plaintiff's neck, shoulders, back arms,
14  hips, and knee.   (AR 388.)

15      Dr. Johnson diagnosed Plaintiff with generalized fibromyalgia,
16  chronic fatigue syndrome, post-traumatic stress disorder, chronic
17  lumbar strain, bilateral tenosynovitis of the forearms and wrists,
18  depression with generalized anxiety disorder, arthritis in the left
19  knee, bilateral shoulder capsulitis, and muscle contraction headaches.
20  (AR 385.)   He determined that she would not be able to: 1) lift more
21  than five pounds; 2) stand or walk for more than ten minutes; or
22  3) sit still for more than an hour at a time.   (AR 386.)   He also
23  opined that Plaintiff was totally and permanently disabled and that
24  she would not be able to perform any work.   (AR 388.)

25      In his decision, the ALJ noted Dr. Johnson's examination findings
26  but rejected his opinion regarding Plaintiff's functional limitations.
27  (AR 23-24.)   The ALJ determined, instead, that Plaintiff could lift
28  and carry up to 20 pounds occasionally and ten pounds frequently and

3

that she could stand, walk, and sit for no more than six hours in an eight-hour workday.  (AR 26.)  He determined further that she must be permitted to alternate between sitting and standing to relieve pain and that she should avoid unprotected heights, hazards, and moving machinery.  (AR 26.)

The ALJ provided two reasons for rejecting Dr. Johnson's limitations.  First, he found that Dr. Johnson's examination findings were inconsistent with the other medical evidence.  (AR 23-24.)  This is a valid reason for rejecting a doctor's opinion.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (confirming ALJ may disregard doctor's opinion that is unsupported by the record as a whole).  And the record supports the ALJ's determination that Dr. Johnson's findings were inconsistent with the other doctors' findings.  For example, examining internist Sean To found that Plaintiff walked with a normal gait and that she had no tenderness in her abdomen or joints, except for in her hands and knees.  (AR 369, 370.)  He found Plaintiff's range of motion within normal limits, except for her knees, which had a decreased range of motion, and her lumbar spine, which had decreased flexion.  (AR 370.)  Unlike Dr. Johnson, Dr. To found no S4 heart gallop.  (AR 369.)  Dr. To opined that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally and that she could stand or walk for six hours in an eight-hour workday.  (AR 371.)  Dr. To also opined that Plaintiff would have no restrictions in sitting or in the use of her hands, and could occasionally walk on uneven terrain.  (AR 371.)[1]

---

[1]   Dr. To's functional determination was endorsed by the October 2005 assessment of reviewing physician Samuel Grossman.  (AR 431-38.)

4

1    Dr. Johnson's findings were also inconsistent with Dr. Mark
2  Glasberg's findings.  (AR 144-47.)  Dr. Glasberg opined that, from a
3  neurological standpoint, Plaintiff was unrestricted in her ability to
4  lift, carry, walk, bend, kneel, stoop, or sit.  (AR 146-147.)

5    State agency reviewing physician L.C. Chiang opined that
6  Plaintiff could lift and carry up to 20 pounds occasionally and ten
7  pounds frequently; stand, walk, and sit for six hours in an eight-hour
8  workday; and occasionally balance, stoop, kneel, crouch, and crawl.
9  (AR 150-52.)

10    In fact, the only doctor who agreed with Dr. Johnson's dire
11 assessment of Plaintiff was her treating physician Emmanuel Ayodele.
12 He opined that Plaintiff could sit for no more than two hours and
13 stand or walk for no more than one hour in an eight-hour workday.  (AR
14 361.)  Dr. Ayodele also opined that Plaintiff could never lift
15 anything heavier than five pounds and that she would be precluded from
16 using her fingers or hands for fine manipulation.  (AR 362, 363.)  The
17 ALJ rejected Dr. Ayodele's assessment, however, on the ground that it
18 was not supported by his own progress notes.  Plaintiff has not
19 challenged that finding here.

20    The ALJ's second reason for rejecting Dr. Johnson's functional
21 assessment was that he had made a mistake when he recorded Plaintiff's
22 weight.  (AR 24.)  The ALJ concluded that, as a result, "it is
23 reasonable to question [Dr. Johnson's] ability to carry out the more
24 difficult parts of the examination, such as the cardiac exam and
25 testing for Tinel's signs and Phalen's tests."  (AR 24.)  This was not
26 a valid reason for rejecting the doctor's opinion.  Nevertheless, the
27 Court finds that the ALJ primarily, and legitimately, relied on the
28

1  fact that Dr. Johnson's opinion was inconsistent with the medical
2  evidence and, therefore, will not disturb his conclusion.[2]

3      2.  The ALJ's Credibility Determination

4      In her second claim of error, Plaintiff contends that the ALJ
5  erred when he found that her testimony was not credible.  (Joint Stip.
6  at 16.)  Here, the Court agrees with Plaintiff.

7      ALJ's are tasked with judging the credibility of witnesses.
8  Where a claimant has produced objective medical evidence of an
9  impairment which could reasonably be expected to produce the symptoms
10 alleged and there is no evidence of malingering, the ALJ can only
11 reject the claimant's testimony for specific, clear, and convincing
12 reasons.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  In
13 making a credibility determination, the ALJ may take into account
14 ordinary credibility evaluation techniques as well as the claimant's
15 daily activities.  *Id.* at 1284.  If the ALJ's credibility finding is
16 supported by substantial evidence in the record, the Court may not
17 engage in second-guessing.  *Thomas*, 278 F.3d at 959.

18     Plaintiff testified that she had pain in both knees, that the
19 pain in her right knee was more severe, and that her knee gives out
20 when she walks.  (AR 44.)  When asked about her knee pain on a scale
21 of one to ten, with ten being the most severe, Plaintiff testified
22 that her right knee pain is an eight.  (AR 44.)  She explained that

23

24     [2]  The Court notes that the ALJ cited to Exhibit C-5F, pages 4-
25 13, numerous times in his decision.  (AR 23, 24, 25.)  These pages do
   not exist.  Exhibit C-5F consists of three pages.  (AR 163-65.)
26 Clearly, it would be as unreasonable for the Court to overturn the
27 ALJ's decision based merely on the fact that he made a mistake in
   citing the record as it was for the ALJ to reject Dr. Johnson's
28 opinion because he made a mistake recording Plaintiff's weight.

1  she takes medication but that it does not relieve the pain entirely.

2  (AR 44.)  She rated her average low back pain at a nine out of ten,

3  with ten indicating "a lot of pain."  (AR 45.)  Plaintiff testified

4  that she has had seizures since she was 36 years old, that she has

5  asthma and breathing problems, that she gets out of breath going up

6  stairs, and that she gained weight and now weighs 230 pounds.  (AR 45-

7  46.)  In addition, Plaintiff testified that she could lift seven to

8  eight pounds, that she could not stand for more than 15-20 minutes at

9  a time, and that she could sit for two hours at a time in a work

10  chair.  (AR 47-48.)  Lastly, Plaintiff testified that her daughter

11  helps her out with shopping and chores and that, though she can drive,

12  she does not due to fear of having a seizure.  (AR 48-49.)

13       The ALJ found that Plaintiff's statements concerning her symptoms

14  were not credible to the extent that they were inconsistent with his

15  residual functional capacity determination.  (AR 26.)  Though the ALJ

16  provided five reasons for discounting her testimony, as set forth

17  below, none of them is adequate.

18       The first reason the ALJ gave for finding Plaintiff not credible

19  was that her medical records did not reveal the "type of impairment

20  (e.g., disc herniation with nerve root compression; subluxation of a

21  knee joint) that could be expected to cause such considerable

22  limitations."  (AR 26.)  Perplexingly, in the next sentence, the ALJ

23  contradicted this finding, writing "[a]s for her testimony regarding

24  musculoskeletal problems, the medical evidence does convey that she

25  has back and knee pain."  (AR 26.)  On the following page, the ALJ

26  noted that the record shows that Plaintiff has "a moderate low back

27  impairment."  (AR 27.)  The ALJ also set out that Plaintiff's knee X-

28

1   ray showed "DJD" (degenerative joint disease) and arthritis.[3]   (AR 27,
2   183, 184.)   Thus, the record contains objective evidence of
3   impairments that might cause limitations.   (AR 182-84.)   Furthermore,
4   to the extent that the ALJ appeared to require one of a number of
5   ailments--such as disc herniation or subluxation of a joint--to
6   support Plaintiff's allegations, he was impermissibly substituting his
7   own medical opinion for that of the physicians of record.   This is
8   prohibited.   See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir.
9   1975); Arquette v. Astrue, 2010 WL 4916603, at *4 (C.D. Cal. Nov. 24,
10  2010).

11      The ALJ's second reason for discounting Plaintiff's testimony was
12  that she had not had any emergency room visits or hospitalizations,
13  stemming from her back and knee problems.   (AR 26.)   This, too, is
14  inadequate.   Though, in general, a failure to seek or receive
15  treatment is a legitimate reason for discounting a claimant's
16  testimony, see Burch, 400 F.3d at 681, Plaintiff's failure to go to
17  the hospital does not establish that she was not in pain.   Plaintiff
18  was taking medication to treat her pain.   (AR 44.)   The fact that she
19  had not visited an emergency room or been hospitalized does not
20  logically undermine her testimony that her constant pain limits her
21  ability to work.

22      The ALJ's third reason for rejecting Plaintiff's testimony was
23  that she had not complained of significant side effects from her
24  medication.   (AR 26.)   In fact, the record shows that Plaintiff
25  complained that her medication caused her drowsiness, stomach pain,
26
27      [3]   The Court also notes that, without citation to any authority,
    medical or otherwise, the ALJ opined that Plaintiff's excessive weight
28  "undoubtedly causes her additional back and joint problems."   (AR 27.)

8

1  nausea, and diarrhea.    (AR 124, 126.)    Even accepting that these
2  symptoms do not constitute "significant" side effects, the Court still
3  questions how, without further explanation, the absence of strong side
4  effects shows that Plaintiff was not credible when she testified, in
5  essence, that she could not work.    The medications she was taking did
6  not control her pain.    Thus, the Court concludes that this reason is
7  not convincing.

8          The ALJ's fourth reason was based on the fact that Plaintiff
9  testified that she had asthma and breathing problems but there had
10  been no diagnosis of asthma in the record.    (AR 26.)    Though
11  Plaintiff's statement might be characterized as an untruth, a more
12  reasonable interpretation is that she was either offering her own
13  opinion about her condition or she was exaggerating.    Nevertheless,
14  the Court finds that this inconsistency tends to support the ALJ's
15  credibility determination.

16          Finally, the ALJ's fifth reason for rejecting Plaintiff's
17  testimony was that, "[r]egarding her daily activities she did not
18  depict her activities as rigorous.    However, she did state that she is
19  able to drive a car (although she chooses not to)."    (AR 26.)    This is
20  far from a convincing reason for questioning Plaintiff's credibility.
21  Indeed, Plaintiff's statement that her activities were *not* rigorous is
22  consistent with her allegations.    Her decision not to drive is based
23  on the fact that she has had seizures and is afraid she might have one
24  when she is driving.    (AR 49.)    The ALJ did not cite any activities
25  that would undermine Plaintiff's claim that she was not capable of
26  working.    *C.f. Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)
27  (noting that daily activities may be grounds for adverse credibility
28  finding "if a claimant is able to spend a substantial part of [her]

1  day engaged in pursuits involving the performance of physical
2  functions that are transferable to a work setting.") (quotation
3  omitted).

4      In the end, of the five reasons relied on by the ALJ for finding
5  that Plaintiff was not credible, only one of them is arguably valid,
6  i.e., that Plaintiff's testimony that she had asthma and breathing
7  problems was not supported by objective medical evidence.  It is hard
8  to say that this testimony alone is enough to discount Plaintiff's
9  entire testimony.  More importantly, it is not clear to the Court
10  whether the ALJ would have found Plaintiff not credible for this
11  reason alone.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d
12  1155, 1162 (9th Cir. 2008) (stating that the "relevant inquiry. . . is
13  whether the ALJ's decision remains legally valid," despite errors in
14  the credibility analysis).  As such, remand is warranted.  On remand,
15  the ALJ will have a chance to reconsider the credibility
16  determination.  In doing so, he is not limited in his analysis and may
17  consider any factors he deems relevant in determining credibility.

18                              IV.

19                         CONCLUSION

20      For these reasons, the Agency's decision is reversed and the case
21  is remanded for further proceedings consistent with this memorandum
22  opinion and order.

23      IT IS SO ORDERED.

24      DATED: December 28, 2010

25
26
27  PATRICK J. WALSH
    UNITED STATES MAGISTRATE JUDGE
28  S:\PJW\Cases-Soc Sec\PAYNE, 8627\MemoOpinion.wpd

                              10